**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| G. HOLDINGS LTD., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA INC., <br><br> Defendant. | CIVIL ACTION NO. 2:20-cv-00342-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff G. Holdings, Ltd. ("G. Holdings" or "Plaintiff") files this Complaint for patent infringement against Defendant Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively "Defendants" or "Samsung") and states as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

2. G. Holdings is the owner of all rights, title, and interest in U.S. Patent No. 7,628,333 (the "'333 Patent") and U.S. Patent No. 9,022,294 (the "294 Patent") (collectively, the "Asserted Patents"), both of which have been attached a**s Exhibit A** and **Exhibit B** respectively and incorporated herein by reference.

3. Defendants have infringed and continues to infringe one or more claims of the Asserted Patents by making, using, offering to sell, and selling within the United States, including

in this District, certain products and services.  G. Holdings seeks to recover monetary damages, attorneys' fees, and costs.

## THE PARTIES

4.      G. Holdings is a limited company organized under the laws of the Commonwealth of The Bahamas, with a principal place of business at Apt-Unit 6, Building 4, Palm Shore, P.O. Box SP 64225, Nassau, NP, Bahamas.

5.      G. Holdings is the true and correct owner of the Patents in the Suit and holds all rights necessary to bring this action.

6.      On information and belief, Defendant Samsung Electronics Co. Ltd. ("SEC") is a corporation organized under the laws of the Republic of Korea, with a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, South Korea.

7.      On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of Samsung Electronics Co., Ltd. and a limited liability company organized under the laws of New York, with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

8.      On information and belief, Defendant SEC owns one hundred percent (100%) of SEA.

9.      Joinder is proper under 35 U.S.C. § 299. The allegations of infringement contained herein are asserted against the Defendants SEC and SEA (collectively, Defendants) jointly, severally, or in the alternative and arise, at least in part, out of the same series of transactions or occurrences relating to Defendants' manufacture, use, sale, offer for sale, and importation of the same accused products. On information and belief, Defendants are part of the same corporate family of companies, and the infringement allegations arise at least in part from Defendants' collective

activities with respect to Defendants' accused products. Questions of fact common to Defendants will arise in the action, including questions relating to the structure and operation of the accused products and Defendants' infringing acts.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     The Court has personal jurisdiction over Defendants for at least the following reasons:  (1) Defendants have committed acts of patent infringement in this District and elsewhere in Texas; (2) Defendants regularly do business or solicit business in this District and in Texas, including through their wholly-owned subsidiary entities; (3) Defendants engage in other persistent courses of conduct and derive substantial revenue from products and/or services provided to individuals in this District and in Texas; (4) Defendants have purposefully established substantial, systematic, and continuous contacts with this District, including the physical location of offices here, for example, offices at 12100 Samsung Blvd, Suite 110, Austin, Texas 78754, 3900 N. Capital of Texas Hwy, Austin, Texas 78746, 7300 Ranch Road 2222, Austin, Texas 78730, and 1700 Scenic Loop, Round Rock, Texas 78681, and should reasonably expect to be hauled into court in this District; and (5) SEA has been authorized to do business in the State of Texas by the Texas Secretary of State.

12.     Defendant SEC is a foreign entity such that venue is proper in any District within the United States.  And Defendant SEA has a designated CT Corporation System, with an address listed in Texas at 1999 Bryan St., Ste. 900, Dallas, TX 75201, as its representative to accept service of process within the State of Texas.

13. On information and belief, Defendants has at least hundreds of employees within this District. On information and belief, third-party witnesses with knowledge regarding the accused functionality reside within this District.

14. Defendants also own and operate an online store, through which it sells substantial volumes of products, including infringing products, in Texas and within this District. Through its online presence, and through numerous distributors and resellers (both online and brick-and-mortar), Defendants directly and indirectly extract significant revenues from Texas and this District.

15. Defendants have committed tortious acts within Texas and this District, and the causes of action set forth in this Complaint arise from those acts. Defendants develop, manufacture, distribute, and sell mobile telephone and computing products that infringe the Asserted Patents, which are, and have been, offered for sale, sold (directly or through Defendants' online store and distribution network), purchased, and used in Texas and within this District. Defendants, directly or through their distribution network, also place infringing products within the stream of commerce, with the knowledge and/or understanding that such infringing products will be sold and/or used in Texas and in this District.

## **FACTUAL ALLEGATIONS**

16. The inventor and principal owner of G. Holdings, Mr. Joël Gaillard, began to pay attention to electronic payments in 1998-99 after visiting a payment card lounge in Miami. His pioneering work in developing a better technology that offers a new, simple, fast, universal, and secure way to make mobile payments resulted in the Asserted Patents and patents in Canada, India, and China.

17. G. Holdings, directly and through its subsidiary DH International, has made significant investments in the development of a computer platform and a secure payment and

4

mobile marketing service called MoneyCell, the first Canadian eWallet.  Tests were carried out for a year and a half at Ecole de Technologie Superieure in Montreal to prepare its commercial deployment.  The innovative technology in MoneyCell won several awards in Canada.  *See* https://www.moneycell.com/about.html.  Mr. Gaillard has invested upwards of $5 million in developing the MoneyCell Technology and related patent portfolio.

**SAMSUNG'S KNOWLEDGE OF THE ASSERTED PATENTS**

18.    Upon information and belief, Samsung was made aware of the Asserted Patents at least as early as July 31, 2017.  Upon information and belief, Samsung was provided with a documentation that identified the Asserted Patents and the accused technology on or around July 31, 2017.  Upon information and belief, in or around March 2019, Samsung was made aware of the relevance of the Asserted Patents to Samsung Pay.

**U.S. PATENT NO. 7,628,333 AND U.S. PATENT NO. 9,022,294**

19.    On April 14, 2003, the United States Patent and Trademark Office duly and legally issued the '333 Patent, entitled "Portable electronic device capable of alternative data conveyance operations responsive to an invariable activation command" after a full and fair examination. The '333 Patent is attached hereto as **Exhibit A** to this Complaint.  The '333 Patent is valid and enforceable under United States patent laws.

20.    On October 21, 2009, the United States Patent and Trademark Office duly and legally issued the '294 Patent, entitled "Portable electronic device and method for alternative data conveyance operations responsive to an invariable activation command" after a full and fair examination.  The '294 Patent is attached hereto as **Exhibit B** to this Complaint.  The '294 Patent is valid and enforceable under United States patent laws.

21.    Plaintiff is the owner of the both the '333 and '294 Patents (collectively, the "Asserted Patents").  Plaintiff possesses all rights of recovery under the Asserted Patents, including the exclusive right to recover for past infringement.

## SAMSUNG'S INFRINGING PRODUCTS AND ACTIVITIES

22.    Samsung Pay is a mobile payment and digital wallet service offered by Samsung that lets users make payments using compatible phones and other devices.

23.    Samsung Pay is "accepted at millions of places" and "works in-store, in-app and online."  *See* https://www.samsung.com/us/samsung-pay/ (last visited Oct. 20, 2020).  Samsung Pay allows for the loading of a card on to a device and "check out with a tap."  *Id*.  Load your cards onto your devices and check out with a tap."  *Id*.  Samsung designs, makes, uses, offers to sell, sells, imports, supplies, and otherwise distributes "Samsung Pay" software and services under the trademark "Samsung" (the "Accused Products").  *See* https://www.samsung.com/us/support/owners/app/samsung-pay (last visited Oct. 20, 2020).

24.    Samsung Pay is implemented on and currently compatible with portable electronic devices, including at least the Galaxy S20, Galaxy S20+, Galaxy S20 Ultra,  Galaxy S10, Galaxy S10+, Galaxy S10e, Galaxy S10 5G, Galaxy S9, Galaxy S9+, Galaxy S8, Galaxy S8+, Galaxy S7, Galaxy S7 Edge, Galaxy S7 Active, Galaxy S6, Galaxy S6 Edge, Galaxy S6 Edge+, Galaxy S6 Active, Galaxy Note20, Galaxy Note20 Ultra, Galaxy Note10+, Galaxy Note10 5G, Galaxy Note9, Galaxy Note8, Galaxy Note5, Galaxy Fold, Galaxy Z Flip, Galaxy Z Flip 5G, Galaxy Z Fold2 5G, Galaxy A50, Galaxy A51, Galaxy A51 5G, Galaxy A71 5G, Gear S2 Sport, Gear S2 Classic, Gear S3 Frontier, Gear S3 Classic, Gear Sport, Galaxy Watch, Galaxy Watch3, Galaxy Watch Active, and Galaxy Watch Active2 (collectively, "Samsung mobile devices").  *See* https://www.samsung.com/us/support/owners/app/samsung-pay (last visited Oct. 20, 2020).

25.     The current and previous versions of Samsung Pay and Samsung mobile devices are non-limiting instances of the Accused Products.  The Accused Products practice the claims of the '333 Patent and '294 Patent.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO.  7,628,333**

26.     Plaintiff incorporates by reference and re-alleges paragraphs 1-57 of this Complaint as if fully set forth herein.

27.     Defendants have directly infringed and continue to infringe at least claim 1 of the '333 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license the Accused Products.

28.     The Accused Products meets all the limitations of at least claim 1 of the '333 Patent. Specifically, claim 1 of the '333 patent recites:

> A portable electronic device, comprising: an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output;
>
> a control device operatively linked to said electronic circuit, with an invariable activation command being issued when said control device is selectively triggered;
>
> a user interface device operatively linked to said electronic circuit;
>
> a data transceiver operatively linked to said electronic circuit, said data transceiver being for exchanging data between said electronic circuit and an external data exchange device, and for receiving a selectively emitted activation cue from a source external to said portable electronic device;
>
> a data conveyance switching element operatively linked to said electronic circuit, said switching element being in an activated state upon an activation cue having been received by said data transceiver, and being in an inactive state when no activation cue was received by said data;
>
> power means for providing power to said portable electronic device;

wherein upon said control device being selectively triggered to issue and in variable activation command;

if said switching element is in said activated state, a data exchange will be initiated through the instrumentality of said data transceiver for exchanging data between said electronic circuit and an external data exchange device;

if said switching element is in said inactive state, data will be conveyed from said electronic circuit to said user interface device for communicating information to the portable electronic device holder.

29.     A non-limiting and exemplary claim chart comparing the Accused Products to claims 1 of the '333 Patent is attached hereto as **Exhibit C** and is incorporated herein as if fully rewritten.  This description is based on publicly available information.  Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the Accused Product that it obtains during discovery.

30.     As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices include an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output.  For example, the Samsung Galaxy S8 contains an electronic circuit that includes a processor, memory, and various I/O ports.  *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 20, 2020).

31.     As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices include a control device (*e.g.*, a button selection with biometric or PIN verification) operatively linked to the electronic circuit (*e.g.*, a processor, memory, and various I/O ports), with an invariable activation command (*e.g.*, command to initiate a transaction) being issued when said control device is selectively triggered (*e.g.*, initiated within selected context).  For example, the Samsung Pay support site explains that a combination of tapping a "Pay" button along with

preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader. *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 20, 2020).

32.     As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices include a user interface device (*e.g.*, a display) operatively linked to the electronic circuit (*e.g.*, a processor, memory, and various I/O ports).  For example, the Samsung Galaxy S8 includes a Super AMOLED display. *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 20, 2020).

33.     As in claim 1 of the '333 Patent, upon information and belief, Samsung mobile devices include a data transceiver (*e.g.*, NFC functionality) operatively linked to the electronic circuit, the data transceiver being for exchanging data (*e.g.*, transaction information) between the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) and an external data exchange device (*e.g.*, a point-of-sale system interface), and for receiving a selectively emitted activation cue (*e.g.*, a signal from an NFC device) from a source external (*e.g.*, a point-of-sale system NFC interface) to the portable electronic device.  For example, the Samsung Galaxy S8 includes an NFC chip        for        NFC        communications.        *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

34.     As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices include a data conveyance switching element (*e.g.*, Samsung Pay software) operatively linked to the electronic circuit, the switching element being in an activated state (*e.g.*, NFC transaction) upon an activation cue (*e.g.*, a signal from an NFC device) having been received by the data transceiver, and being in an inactive state (*e.g.*, idle state) when no activation cue was

received by the data transceiver.  For example, Samsung mobile devices will enter an NFC transaction state when a user taps the "Pay" button and receives a signal from a POS device.  The Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).

35.    As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices include power means for providing power to the portable electronic device (*e.g.*, a processor, memory, and various I/O ports).  For example, each of the Samsung mobile devices include a battery that powers the electronic device.  For example, the Samsung Galaxy S8 includes a battery to power the phone.  *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

36.    As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices are enabled to perform certain functions upon the control device being selectively triggered to issue an invariable activation command (*e.g.*, command to initiate a transaction).  For instance, the Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).

37.    As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices enabled such that if the switching element (*e.g.*, Samsung Pay software) is in the activated state (*e.g.*, NFC transaction), a data exchange (*e.g.*, NFC transaction) will be initiated through the

instrumentality of the data transceiver (*e.g.*, NFC functionality) for exchanging data between the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) and an external data exchange device (*e.g.*, the point-of-sale system interface). For example, the Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader. *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).

38. As in claim 1 of the '333 Patent, upon information and belief, the Samsung mobile devices are enabled such that if the switching element (*e.g.*, Samsung Pay software) is in the inactive state (*e.g.*, idle state), data will be conveyed from the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) to the user interface device for communicating information (*e.g.*, opening the Samsung Pay application) to the portable electronic device holder. *See* https://www.samsung.com/us/samsung-pay/ (last visited Oct. 19, 2020).

39. In violation of 35 U.S.C. § 271, Defendants are now, and has been directly infringing the '333 Patent.

40. Defendants have directly infringed and continues to directly infringe at least one claim of the '333 Patent by making, using, offering for sale, and selling the Accused Product without authority in the United States. As a direct and proximate result of Defendants' direct infringement of the '333 Patent, G. Holdings has been and continues to be damaged.

41. By engaging in the conduct described herein, Defendants have injured G. Holdings is thus liable for infringement of the '333 Patent, pursuant to 35 U.S.C. § 271.

42. Defendants have committed these acts of infringement without license or authorization.

11

43.     As a result of Defendants' infringement of the '333 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

44.     Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendants are finally and permanently enjoined from further infringement.

45.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint. The claim chart depicted in **Exhibit C** is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

46.     On information and belief, the infringement of the '333 Patent by Defendants has been willful and continues to be willful.  On information and belief, Defendants had knowledge of the '333 Patent and the accused Samsung Pay functionality at least as early as July 31, 2017 through at least the documentation that was provided to them and through communications related to the '333 Patent and accused Samsung Pay functionality.  Additionally, Defendants have knowledge of the '333 Patent as a result of the filing and/or service of the Complaint (D.I. 1). Despite actual knowledge, Defendants continue to infringe the '333 Patent.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO.  9,022,294

47.     Plaintiff incorporates by reference and re-alleges paragraphs 1-70 of this Complaint as if fully set forth herein.

48.    Defendants have directly infringed and continues to infringe at least claim 1 of the

'294 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling

in the United States, and/or importing into the United States without authority or license the

Accused Product.

49.    The Accused Product meets all the limitations of at least claim 1 of the '294 Patent.

Specifically, claim 1 of the '294 patent recites:

A cellular phone, comprising:

an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output;

a user-triggered control device operatively linked to said electronic circuit, said user-triggered control device configured to be operated by a user via one of a button, a keypad, a tactile screen, and a biometric parameter detector, and after being operated issue an invariable activation command, with said invariable activation command being issued when said control device is selectively triggered by the user;

a first data transceiver operatively linked to said electronic circuit, said first data transceiver being for exchanging data between said electronic circuit and a first external data exchange device over a first communication link;

a second data transceiver operatively linked to said electronic circuit, said second data transceiver being for exchanging data between said electronic circuit and a second external data exchange device over a second communication link that is distinct from said first communication link;

a cue receiver operatively linked to said electronic circuit for receiving an activation cue from a source external to said cellular phone;

a data conveyance switching element operatively linked to said electronic circuit, said switching element being assigned a first state upon an activation cue having been received by said cue receiver, and being assigned a second state when no activation cue was received by said cue receiver;

and power means for providing power to said portable electronic device cellular phone;

13

wherein upon said control device being selectively triggered by the user to issue said invariable activation command;

if said switching element is in said first state, a first data conveyance operation will be initiated through the instrumentality of said first data transceiver for sending data from said electronic circuit to the first external data exchange device
over said first communication link;

and if said switching element is in said second state, a second data conveyance operation will be initiated through the instrumentality of said second data transceiver for sending data from said electronic circuit to the second external data
exchange device over said second communication link.

50.     A non-limiting and exemplary claim chart comparing the Accused Products to at least claim 1 of the '294 Patent is attached hereto as **Exhibit C** and is incorporated herein as if fully rewritten.  This description is based on publicly available information.  Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the Accused Product that it obtains during discovery.

51.     As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include an electronic circuit (*e.g.*, a processor, memory, and various I/O ports) capable of storing data therein, capable of processing data, and capable of data input and output.  For example, the Samsung Galaxy S8 contains an electronic circuit that includes a processor, memory, and various I/O ports.  *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

52.     As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include a user-triggered control device (*e.g.*, a button selection with biometric or PIN verification) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said user-triggered control device configured to be operated by a user via one of a

14

button, a keypad, a tactile screen, and a biometric parameter detector, and after being operated issue an invariable activation command (*e.g.*, command to initiate a transaction), with said invariable activation command being issued when said control device is selectively triggered by the user (*e.g.*, initiated within a selected context).  For example, the Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).  In addition, Samsung Pay can be used for in-app or online purchases by also tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint. *See* https://www.samsung.com/us/samsung-pay/ (last visited Oct. 19, 2020).

53.     As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include a first data transceiver (*e.g.*, NFC functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said first data transceiver being for exchanging data (*e.g.*, transaction information) between said electronic circuit and a first external data exchange device (*e.g.*, a point-of-sale system interface) over a first communication link (*e.g.*, NFC).  For example, the Samsung Galaxy S8 includes an NFC chip for NFC communications.  *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

54.     As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include a second data transceiver (*e.g.*, cellular or Wifi functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said second data transceiver being for exchanging data (*e.g.*, transaction information) between said electronic circuit and a second external data exchange device (*e.g.*, a networked transaction server) over a

15

second communication link (*e.g.*, cellular or Wifi) that is distinct from said first communication link (*e.g.*, NFC). For example, the Samsung Galaxy S8 includes a Wifi module and an RF transceiver. *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

55.    As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include a cue receiver (*e.g.*, NFC functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports) for receiving an activation cue (*e.g.*, a signal from an NFC device) from a source external (*e.g.*, a point-of-sale system NFC interface) to said cellular phone. For example, the Samsung Galaxy S8 includes an NFC chip for NFC communications. *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

56.    As in claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include a data conveyance switching element (*e.g.*, Samsung Pay software) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said switching element being assigned a first state (*e.g.*, NFC transaction) upon an activation cue (*e.g.*, a signal from an NFC device) having been received by said cue receiver (*e.g.*, NFC functionality), and being assigned a second state (*e.g.*, online or in-app transaction) when no activation cue was received by said cue receiver. For example, Samsung mobile devices will enter an NFC transaction state when a user taps the "Pay" button and receives a signal from a POS device. Alternatively, if the user taps the "Pay" button in a default state, when no signal from a POS device is received, it will be in an in-app or online transaction state. The Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an

NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).  In addition, Samsung Pay can be used for in-app or online purchases by also tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint.  *See* https://www.samsung.com/us/samsung-pay/ (last visited Oct. 19, 2020).

57.    As claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices include power means for providing power to the portable electronic device cellular phone.  For instance, each of the Samsung mobile devices include a battery that powers the electronic device.  For example, the Samsung Galaxy S8 includes a battery to power the phone.  *See* https://www.ifixit.com/Teardown/Samsung+Galaxy+S8+Teardown/87136 (last visited Oct. 19, 2020).

58.    As claim 1 of the '294 Patent, upon information and belief, the Samsung mobile devices are designed such that upon the control device being selectively triggered by the user (*e.g.*, initiated within a selected context) to issue said invariable activation command (*e.g.*, command to initiate a transaction).  The Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).  In addition, Samsung Pay can be used for in-app or online purchases by also tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint.  *See* https://www.samsung.com/us/samsung-pay/ (last visited Oct. 19, 2020).

59.    As claim 1 of the '294 Patent, upon information and belief, for the Samsung mobile devices, if the switching element (*e.g.*, Samsung Pay software) is in the first state (*e.g.*, NFC transaction), a first data conveyance operation (*e.g.*, NFC transaction) will be initiated through the

instrumentality of the first data transceiver (*e.g.*, NFC functionality) for sending data from the electronic circuit to the first data exchange device (*e.g.*, the point-of-sale system interface) over the first communication link (*e.g.*, NFC).  The Samsung Pay support site explains that a combination of tapping a "Pay" button along with preferred security, such as PIN, iris scan, or fingerprint, is required to initiate an in store transaction with a point-of-sale system, such as an NFC reader.  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).

60.    As claim 1 of the '294 Patent, upon information and belief, for the Samsung mobile devices, if the switching element (*e.g.*, Samsung Pay software) is in said second state (*e.g.*, in-app or online transaction), a second data conveyance operation (*e.g.*, cellular or Wifi transaction) will be initiated through the instrumentality of said second data transceiver (*e.g.*, cellular or Wifi functionality) for sending data from said electronic circuit to the second external data exchange device (*e.g.*, a networked transaction server) over said second communication link (*e.g.*, cellular or Wifi).  *See* https://www.samsung.com/us/support/answer/ANS00045102/ (last visited Oct. 19, 2020).

61.    In violation of 35 U.S.C. § 271, Defendants are now, and have been directly infringing the '294 Patent as described in particularity in paragraphs 40-57.

62.    Defendants have had knowledge of infringement of the '294 Patent at least as of the service of the present Complaint.

63.    Defendants have directly infringed and continues to directly infringe at least one claim of the '294 Patent by making, using, offering for sale, and selling the Accused Product without authority in the United States.  As a direct and proximate result of Defendants' direct infringement of the '294 Patent, G. Holdings has been and continues to be damaged.

64. By engaging in the conduct described herein, Defendants have injured G. Holdings is thus liable for infringement of the '294 Patent, pursuant to 35 U.S.C. § 271.

65. Defendants have committed these acts of infringement without license or authorization.

66. As a result of Defendants' infringement of the '294 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

67. Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendants are finally and permanently enjoined from further infringement.

68. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint. The claim chart depicted in **Exhibit C** is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

69. On information and belief, the infringement of the '294 Patent by Defendants has been willful and continues to be willful. On information and belief, Defendants had knowledge of the '294 Patent and the accused Samsung Pay functionality at least as early as July 31, 2017 through at least the documentation that was provided to them and through communications related to the '294 Patent and accused Samsung Pay functionality. Additionally, Defendants have

19

knowledge of the '294 Patent as a result of the filing and/or service of the Complaint (D.I. 1).

Despite actual knowledge, Defendants continue to infringe the '294 Patent.

## DEMAND FOR JURY TRIAL

70.    G. Holdings demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, G. Holdings respectfully requests:

a.    A Judgment be entered that Defendants have infringed one or more claims of the '294 and '333 Patents;

b.    A Judgment that the Defendants' infringement of the '294 and '333 Patents was willful and that Defendants' continued infringement of the '294 and '333 Patents is willful;

c.    An award of damages pursuant to 35 U.S.C. §284, sufficient to compensate Plaintiff for the Defendants' past infringement and any continuing or future infringement;

d.    An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

e.    That Defendants be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

f.    That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated:  April 7, 2021                                Respectfully submitted,

                                                                          By: *Edward R. Nelson III*
                                                                          Edward R. Nelson III
                                                                          ed@nbafirm.com
                                                                          Christopher G. Granaghan
                                                                          chris@nbafirm.com
                                                                          **NELSON BUMGARDNER**
                                                                          **ALBRITTON PC**

3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
T: (817) 377-9111
F: (817) 377-3485

Rodney R. Miller
Texas Bar No. 24070280
Admitted in this District
rmiller@hallboothsmith.com
Gaylon Hollis
Georgia Bar No. 653106
(*Admitted Pro Hac Vice*)
ghollis@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
191 Peachtree Street, NE, Suite 2900
Atlanta, GA 30303
T:  404.586.6601
F:  404.954.5020

Daniel C. Miller
New York Bar No. 4232773
(*Admitted Pro Hac Vice*)
dmiller@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
366 Madison Ave, Fifth Floor
New York, NY 10017
T:  917.805.2460

Karl Braun
Tennessee Bar No. 022371
(*Admitted Pro Hac Vice*)
kbraun@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
424 Church, Suite 2950
Nashville, TN 37219
T:  615.313.9911

*COUNSEL FOR PLAINTIFF*
*G. HOLDINGS, LTD.*

21

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all parties of record on April 7, 2021, via the Court's CM/ECF system.

*/s/ Edward R. Nelson III*