**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| G. HOLDINGS LTD., <br><br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA INC., <br><br> Defendant. | Case No. 2:20-cv-00342-JRG <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF G. HOLDINGS LTD.'S REPLY CLAIM CONSTRUCTION BRIEF**

## I.    DISPUTED CLAIM TERMS

### A.  No Order of Steps

Defendants argue that each and every step in claim 11 of the '333 Patent and claim 12 of the '294 Patent must be performed in the exact order recited.  Defendants' proposed construction would render the phrase "awaiting an activation cue" (step A) meaningless as it requires the completion of this step before any other steps are performed.  Defendants' narrowing construction is improper and inconsistent with the plain reading of the claims.  ECF 44 at 7-11.

Defendants' reliance on *Mformation Technologies, Inc. v. Research in Motion Ltd.*, is misplaced. 764 F.3d 1392, 1398-1400 (Fed. Cir. 2014).  In fact, the "general rule" as noted in *Mformation* is that "[u]nless the steps of a method [claim] actually recite an order, the steps are not ordinarily construed to require one." *Mformation*, 764 F.3d at 1398-1399.  Further, courts "[f]irst [] look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written," and "[i]f not, [courts] next look to the rest of the specification to determine whether it directly or implicitly requires such a narrow construction."   *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-1370 (Fed. Cir. 2003) (citation omitted).

Samsung through its alleged order of the steps argument is actually trying to narrow the scope of the claims by requiring that certain steps immediately precede additional subsequent steps, without identifying any claim language or specification citation that supports such a limited read.  Where there is no clear language in the claim and no clear disavowal of claim scope, such a narrowing of the claim is erroneous.  In fact, the language of the claim clearly anticipates a much broader understanding.  Step A requires "awaiting" an activation cue.  No subsequent language states that this "awaiting" should end simply because the control device is selectively triggered.  Samsung attempts to import this limitation.  In addition, the language of claim step C

1

simply states that once the control device is selectively triggered, there is an additional if/else condition that will be evaluated. Samsung would have the Court believe that the recitation of additional steps requires the immediate execution of those steps. But nothing in the claims requires such a limited read as "a matter of logic or grammar." *Id*. at 1398. For example, the claim language does not preclude the switching element from being in a state (*e.g.*, inactive state or second state), the issuance of an invariable activation command through the triggering of the control device (step C), and then the receiving of an activation cue to (step A) to alter the state of the switching element (*e.g.*, active state or first state). Defendants' argument also fails because the specification teaches that step C can occur before step A (*e.g.*, user triggering the control device and then confirming the method of proximity data conveyance by moving the device within a determined range of the data exchange device). *See* ECF 44-3 at 18:7-59.

Defendants have not pointed to any language in the claim that requires the "activation cue" step (step A) must occur before the "selectively triggering" step (step C). *See* ECF 49 at 5. In *Mformation*, the general rule did not apply because "the separate sub-step for establishing a connection would [have] become 'superfluous' if [the Court] concluded that a connection did not have to be established (completed) before transmission," since "establishing a connection is necessarily encompassed in transmitting a command." 764 F.3d at 1399. No claimed step would be rendered superfluous here by adhering to the general rule; rather, neither the claims nor the specification precludes step C from being performed before, during, or after step A. *See* ECF 44-4 at ¶ 33. Defendants also attempt to argue that the claims require an order of the steps by importing alleged limitations from the specification. This is improper as these cited exemplary embodiments should not be imported into the claim. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

## B. Switching Element Limitations

G. Holdings maintains that the claim terms "switching element" and "data conveyance switching element" are not subject to § 112, ¶6.  The claim language read in light of the specification, "recites sufficiently definite structure to avoid § 112, ¶6." *MTD Products*, 933 F.3d at 1342.  As previously discussed, the claims are not drafted in means-plus-function format and are not described as functional terms in view of the surrounding claim language and supporting specification.  ECF 44 at 13-14.  Also, a POSITA would understand that the claim terms connote sufficiently definite structure such that § 112, ¶6 does not apply.  *See* ECF 44-4 at ¶ 34.

Defendants argue that at step one in determining whether the claim language involves § 112, ¶6, the court must not rely on the specification to determine if the claim language recites sufficient structure and that G. Holdings' allegedly "conflates" the step one analysis by referencing the specification.  ECF 49 at 13.  Defendants advance this argument, despite admitting that "the claims must be read in light of the specification." *Id*.  The gist of Defendants' argument is that the specification cannot be used by a POSITA to understand whether a term connotes sufficiently definite structure even when the very same claim term is defined and used throughout the specification as connoting sufficiently definite structure.  Defendants incorrectly assume that simply because the claim terms "switching element" and "data conveyance switching element" contain the term "element," the terms are automatically subject to § 112, ¶6 despite the teaching of the specification. *Id*.  Defendants do not cite a single case that supports this proposition.

Defendants rely on a misreading of *MTD Products* to suggest that the specifications cannot be used to determine whether a term is means-plus-function. *Id*. at 13-14.  Instead, the Federal Circuit in *MTD Products* unequivocally stated that:

> **The ultimate question is whether the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112, ¶ 6**. […]

3

> Finally, we note that "**[c]laims are interpreted in light of the written description supporting them, and that is true whether or not the claim construction involves interpreting a 'means' clause.**"

*MTD Products Inc. v. Iancu*, 933 F.3d 1336, 1341-1342 (Fed. Cir. 2019) (emphasis added, citations omitted). Defendants' argument ignores this clear case law. Further, in *MTD Products*, the Court determined that the PTAB erred when it relied on the specification's description of "ZTR control assembly" to conclude that the claim term "mechanical control assembly" had an established structural meaning since the specification did not "refer to a 'mechanical control assembly.'" *Id*. That is not the case with the terms "switching element" and "data conveyance switching element." Here, the specification confirms that the terms are structural as it (a) provides a definition of the claim term (*i.e.*, "switching element 44 b"); (b) provides examples of "what structures or class of structures fall within the definition of the term" (*e.g.*, a series of instructions programmed onto a microchip, decisional logical circuit, and virtual program); and (c) describes how the term interacts with other components of the invention (*e.g.*, "electronic circuit 14," "control device 12," and "transceiver 18"). ECF 44 at 14-17. Further, Defendants' own expert stated that "[t]he **specifications of the Asserted Patents disclose that the 'data conveyance switching element' and/or 'switching element' is** a decisional logical circuit or a series of instructions programmed onto a microchip or a processor/general computer/microcontroller." ECF 44-7 at ¶ 40 (emphases added). As such, Defendants' proposal to construe the term pursuant to § 112, ¶ 6 should be rejected.

### C. "data exchange device"

G. Holdings maintains that the term "data exchange device" is not subject to § 112, ¶ 6. The claim language read in light of the specification "recites sufficiently definite structure to avoid § 112, ¶6. *MTD Products*, 933 F.3d at 1342. As discussed in G. Holdings' Opening Brief, the

claims are not drafted in means-plus-function format and are not described as functional terms in view of the surrounding claim language and supporting specification. ECF 44 at 17-20. Moreover, a POSITA would understand that the claim terms connote sufficiently definite structure such that § 112, ¶6 does not apply. ECF 44-4 at ¶ 35. As discussed above, Defendants' reliance on *MTD Products* to argue that in a § 112, ¶6 determination, the court must not look to the specification to determine if sufficiently definite structure is disclosed is improper. *Supra* at 3-4. Rather, the court must look to the claim language, in view of the specification, to determine if a term connotes sufficiently definite structure to a POSITA such that § 112, ¶6 does not apply. *Id*.

Defendants' reliance on *Robert Bosch* is also misguided. In *Robert Bosch*, the Court determined that the specification did "not contain a single reference to the structure of the 'program recognition device'" and was "silent on what such a 'program loading device' consists of." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099-1100 (Fed. Cir. 2014). Here, the specifications of the Asserted Patents do provide structure guidance for the term "data exchange device." *See* ECF 44-2 at 5:47-54; ECF 44-3 at 13:12-41 ("Data exchange device 9 can be any sort of data exchange device comprising an electronic circuit (not shown) therein and a data transceiver 9 a therein able to cooperate with transceiver 18 of device 10.").) Also, the specification: (a) provides a definition of the claim term (*i.e.*, "data exchange device 9"); (b) provides examples of "what structures or class of structures fall within the definition of the term;" and (c) describes how the term interacts with other components of the invention. ECF 44 at 18-19. As such, Defendants' proposal to construe the term pursuant to § 112, ¶ 6 should be rejected.

### D. "invariable activation command"

Defendants' proposed construction tries to define this term, not by what it is, but by how it is used. And Defendants also attempt to ascribe a meaning to G. Holdings' proposed term "state-

dependent command" not offered or suggested by G. Holdings.  As previously discussed, the patent defines an invariable activation command as a command, the purpose of which is determined by the state of the switching element.

> The **same invariable activation command** will thus be issued upon control device 12 being triggered, and it is the **state** of switching element 44b, resulting from the receipt or non-receipt of activation cue by portable electronic device 10, that **will be decisive** as to the type of data conveyance that will occur.

ECF 44-2 at 7:24-29 (emphasis added).  The "invariable activation command" is a command the result of which is state-dependent.  *Id.*  Specifically, the command will take one path if the switching element is in a first state, *e.g.*, an active state, and the command will take a second path if the switching element is in a second state, *e.g.*, an inactive state.  As the claim clearly recites how the "invariable activation command" is used, Defendants' attempt to import its potential use into the definition is duplicative and potentially confusing to a finder of fact.  A POSITA would appreciate that an "invariable activation command" is a command that is issued in response to the control device input, the use of which depends on the state of the device.  ECF 44-4 at ¶ 36.  Thus, G. Holdings requests that the Court adopt its construction.

### E.  Claims not Indefinite Under *MasterMine*

The format of claim 1 of the '333 Patent and claims 1 and 10 of the '294 Patent does not make it indefinite.  The critical inquiry is whether a POSITA would be able to discern when infringement occurs.  *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017).  A POSITA would recognize the infringement occurs when an apparatus capable of performing the recited functionality is made, sold, or used.  ECF 44-4 at ¶ 38.  Here, the claims do not require an act by the user for infringement; instead, the claims are infringed by a product with a "control device" or "a user-triggered control device" capable of performing the recited function

(*e.g.*, issue an activation command that triggers a data conveyance operation) in an operative environment. *MasterMine Software, Inc.*, 874 F.3d at 1316.

Defendants argue that the format of the claims "require[s] a user to act to trigger" certain functionality. ECF 49 at 27. Defendants ignore how the claim language describes the functionality of the apparatus. Claim 1 of the '333 Patent is directed to "[a] portable electronic device" that includes "a control device" that is further defined as having specific functionality. For example, the control device is configured to issue an activation command that triggers a data conveyance operation when pressed or interacted with (*e.g.*, selectively triggered). Similarly, claims 1 and 10 of the '294 Patent are directed to "[a] cellular phone" that includes "a user-triggered control device" that is further defined as having specific functionality. For example, the "user-triggered control device" is configured to include either a button, a keypad, a tactile screen, or a biometric parameter detector that, when pressed or interacted with, issues an activation command that triggers a data conveyance operation. Thus, there is no uncertainty about when infringement would occur, as it plainly occurs when a system is created that can perform the specific functions. Therefore, claim 1 of the '333 Patent and claims 1 and 10 of the '294 Patent are not indefinite and should be afforded their plain and ordinary meaning.

### F.  "conveyed toward a close proximity"

Defendants have failed to meet their burden in establishing that this element is indefinite. "As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence." *Semcon IP Inc. v. Louis Vuitton North American, Inc.*, 2:19-CV-00122-JRG, 2020 WL 2544774, at *5 (E.D. Tex. May 19, 2020). The only evidence on which Defendants appear to rely is a series of conclusory statements made by their expert, Dr. Akl. ECF 49 at pp. 25-26. Such conclusory and unsupported statements are not

helpful to the Court.  *Phillips*, 415 F.3d at 1318.  In fact, Dr. Akl improperly assumes the very facts that are essential to his indefiniteness conclusion and, as such, his opinion lacks the hallmarks of reliable expert testimony.  *See, e.g., Semcon IP Inc.* at *15 (citing *Phillips*, 415 F.3d at 1318 ("extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias")).

Dr. Akl states, without support, that the term "conveyed toward a close proximity" has "no particular meaning in the art."  ECF 44-7 at 70.  Not only is this statement conclusory and unsupported, but Dr. Akl, himself, seems to have very clearly understood this concept when he approved a dissertation in 2014 that had very similar language.  *See* Miller Dec. Ex. 1 at cover, iii, 117, 120, and 134.  Dr. Akl apparently read, reviewed, and approved this 2014 dissertation, in which the doctoral candidate discussed pairing a headset unit with a USB dongle, stating: "The USB receiver connects to the headset automatically when the headset is in **close proximity**" and "Once the USB dongle is plugged into the phone and the head set [sic] is switched on and **brought into close proximity**, the dongle will establish the Dongle-to-Headset connection automatically." *Id.* at 117 and 120 (emphasis added).  Nothing in the dissertation provides any information regarding the parameters of what "close proximity" means, yet apparently it was easily understood by multiple faculty members, including Dr. Akl.  Not only does Dr. Akl understand the meaning of "conveyed toward a close proximity" but Samsung understands what it means.  Samsung is the assignee of record for scores of patents that use the phrase "close proximity" in the specifications and claims.  By way of a single example, Samsung Electronics Co. Ltd. is assignee of record for U.S. Patent No. 9,716,530, which claims in relevant part "the mobile device is disposed in **close proximity** to the at least one of the plurality of passive devices" with no clearly identified

8

limitations in the specification with regard to "close proximity."  *See* Miller Dec. Ex. 2 at claims 7-11, 14, and 16-17.  Samsung clearly knows that "close proximity" has meaning to a POSITA.

The plain language of the claim and specification provides proper guidance for the phrase "conveyed toward a close proximity," and it is therefore not indefinite.  Outside a litigation context, Samsung and Dr. Akl would seem to agree that a POSITA reading the claim language and specification would understand with reasonable certainty that the phrase "conveyed toward a closed proximity" has objective boundaries well-defined by the apparatus and method's capabilities.  ECF 44-4 at ¶ 37.  Specifically, a POSITA would understand that both the cellular phone and the data exchange device would have a range, and transactions in a proximity system, as described in the specification, depend on the range of the cellular phone and the data exchange devices overlapping such that communication between the systems can occur.  *Id*.  As such, Samsung cannot show indefiniteness by clear and convincing evidence.

### G.  "upon"/"wherein upon . . ."

Defendants suggest that they are seeking a "plain and ordinary meaning" construction; however they then seek to construe these phrases in ways that import limitations.  The plain language of the claims does not require construction, and Defendants' ham-handed attempt to import limitations under the guise of "plain and ordinary" meaning should be rejected.  The patentee describes the purpose of the patent to be "to provide a device that may issue one or two data conveyance operations responsive to an invariable activation command issued by a user-triggered control device, depending on whether or not an external cue has been received."  ECF 44-5 at 12.  This statement does not state, as Defendants suggest, that the external cue must have been received prior to the user triggering the control device.  In fact, this same statement is true if the activation cue is received before triggering the control device, concurrently with triggering the

9

control device, and after triggering the control device, if the triggering of the control device starts a timer to look for an activation cue. It is also difficult to understand how G. Holdings' proposed construction of "plain and ordinary meaning" would render "upon" meaningless. The word "upon" is a word that has meaning and nuance to a layperson, let alone a POSITA, and to import limitations from a dictionary definition, as Defendants propose, only seeks to potentially limit the scope of the claims for no apparent reason. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-1207 (Fed. Cir. 2010) (affirming holding that term "addressed to a client" required no construction where accused infringer's proposed construction "would unjustifiably narrow the term's broad scope, which was not explicitly limited or redefined by the specification").

Defendants appear to propose that if "upon" is understood as "when," it would require that nothing could happen between the triggering of the control device to issue an invariable activation command and the determination of the state of the switching element. Nothing in the language of the "wherein upon..." claim elements requires such a narrow interpretation. The claim language states that if the control device is triggered, the state of the switching element ultimately determines the path of the invariable activation command. There is no support in the language of the claims or the intrinsic record for Defendants' proposal that the disclosed elements of these apparatus claims are required to interact in only one specific way—namely that, as Defendants' propose, the apparatus cannot wait for an activation cue upon the triggering of the control device or that an activation cue can be received concurrently with the triggering of the control device. Rather, the claims are directed to a portable electronic device that includes, among other things, a control device and a switching element and recites additional structure (*e.g.*, if/else logic) comprising the switching element.

10

Dated:  May 5, 2021

Respectfully submitted,

By: */s/ Edward R. Nelson III*
Edward R. Nelson III
ed@nbafirm.com
Christopher G. Granaghan
chris@nbafirm.com
**NELSON BUMGARDNER
ALBRITTON PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
T: (817) 377-9111
F: (817) 377-3485

Rodney R. Miller
Texas Bar No. 24070280
Admitted in this District
rmiller@hallboothsmith.com
Gaylon Hollis
Georgia Bar No. 653106
(*Admitted Pro Hac Vice*)
ghollis@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
191 Peachtree Street NE, Suite 2900
Atlanta, GA 30303
T:  404.586.6601
F:  404.954.5020

Daniel C. Miller
New York Bar No. 4232773
(*Admitted Pro Hac Vice*)
dmiller@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
366 Madison Ave, Fifth Floor
New York, NY 10017
T:  917.805.2460

Karl Braun
Tennessee Bar No. 022371
(*Admitted Pro Hac Vice*)
kbraun@hallboothsmith.com
**HALL BOOTH SMITH, P.C.**
424 Church, Suite 2950
Nashville, TN 37219
T:  615.313.9911
*Counsel for Plaintiff G. Holdings Ltd.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via electronic mail on this 5th day of May, 2021.

/s/ Edward R. Nelson III